All right, we have two cases to argue this morning and one tomorrow. After the first case, we will take just a real short break to reconstitute the panel and not more than five or ten minutes and then crank back up to hear the second case. The first case, Elliott Williams v. Jeffrey Catoe, I understand Ms. Mills wants to exercise the prerogative of the uninterrupted portion and then the lights will flash and then you'll be on for questions and Mr. Hawkins has waived. So having said that, we call the case and Ms. Mills, you're up. If you will, I mean, everybody else can probably hear you, but I can barely hear you. So, you know, just try to, if you project straight into it, I like to say your theater voice and it'll pick up good and, you know, we can hear it back and forth. Thank you, Your Honor. Can you hear me? Gotcha. Okay. Good morning. My name is Allison Mills. I'm here on behalf of Elliott Williams. Elliott Williams is a Texas state prisoner who filed a complaint in which he alleges prison personnel were deliberately indifferent to his serious medical needs. He has a heart condition. He alleges indifference to that condition resulted in his heart attack and after the heart attack, prison personnel were deliberately indifferent to his need for follow-up care. The district court looked at the medical records in this case and identified what it called serious issues. The facts are the kinds of facts that in a lawsuit would warrant professional development. Mr. Williams asked for appointment of counsel. The district court said no, and he appeals that decision to you. My argument this morning will have two parts and that's because there are two questions before the court. Mr. Williams and the state ask two different questions. Mr. Williams asked whether he is entitled to counsel in this case. The state asks whether having been denied counsel, he is entitled to appeal that denial to you. Under the law as it exists today, I submit the answer to both questions is yes. The state asks you to overturn at least part of that law. I will get to the state's arguments, but first I want to quickly address the question that Mr. Williams raises and that is whether he is entitled to counsel. As you know, there's no constitutional right to counsel in civil cases, but federal courts do appoint counsel in exceptional cases, and in fact, the law is that if there are exceptional circumstances, a federal district court must appoint counsel. There is a test for whether exceptional circumstances exist. That's the Omer test. It has four factors. Quickly summarize, those factors are one, type and complexity of the case, two, the whether the evidence might include some conflicting testimony, which we presume would require some legal training to cross-examine, and finally, four, whether appointment of counsel will benefit everyone and not merely the pro se plaintiff. The district court was required to make specific findings for each of these factors. It did not do that. The district court said simply this case is not unduly complicated, so no counsel. That's it. I call it just a cut-and-paste no, and that's because the same language is cut-and-pasted into all three of the orders denying counsel in this case. You can, under your precedent, remand to the district court with instructions to make specific findings as to each factor, or I submit the simplest thing to do is to vacate the district court's order and remand with instructions to appoint counsel because exceptional circumstances exist. Very quickly, you can do these factors yourself on this record. First, you ask, is this case complex? Well, I will just say this is not an ordinary case. This is a deliberate indifference case. As you know, that is a very hard thing to prove, and it's extremely high standard. Here we have a large volume of records. Mr. Williams will be required to review those records and to make effective use of them in depositions. The depositions surely will be of security and medical personnel who will disagree as to who was responsible for ensuring that he received treatment. That testimony will be conflicting. We also have, separate from what the court characterized as his cardiovascular claim, what the district court characterized as a heat claim, which arises from his allegations that he has been exposed to extreme heat, notwithstanding his sensitivities. That claim will likely require some highly specialized expert testimony. So is this case complex? I think looking at cases in which you have appointed counsel, this case is complex enough to warrant professional development. The first factor weighs in favor of appointment. The second factor, you consider Mr. Williams' own abilities. He has no legal or medical training, and the record is his access to the law library is severely restricted. He lives on the administrative segregation side of his unit. He is effectively on lockdown 23 hours a day. The record is that even when he is allowed to go to the library, his access to materials is restricted. He is not in a position to investigate and present the facts of his case, which, as the district court said, presents serious issues. Third factor, you ask whether there will be conflicting testimony. As I've already said, surely medical and security personnel are going to disagree as to who was responsible for delivering Mr. Williams to numerous appointments at which he was never delivered. That conflicting testimony gets right at the very heart of Mr. Williams' case, and without the assistance of counsel, he will not be able to effectively cross-examine those witnesses. So the third factor weighs in favor of appointment of counsel. And finally, the fourth factor, you ask whether appointment of counsel will benefit everyone and not merely Mr. Williams. And I submit there is no stage in these proceedings that will not be benefited by the appointment of counsel. The state has already complained that Mr. Williams already has filed something in the range of 80 pleadings in the district court. That's a lot of work for the court and the state. Counsel surely will reduce the number of filings by counseling Mr. Williams on what are the important issues to raise and how to raise them. Counsel's participation in discovery will minimize the court's participation in that. I am often asked to represent pro bono indigent civil rights plaintiffs in cases such as these, and I'm certainly not a legal authority, but based on my experience, this is precisely the kind of case where appointment of counsel can make life easier for everyone. If the district court, instead of straightaway denying Mr. Williams' motion for counsel, had considered the four OMRA factors and made the specific findings it was required to make, I think it would have reached the only rational conclusion, and that is this is one of those rare but exceptional cases. If the question you ask yourselves today is whether Mr. Williams is entitled to counsel, the answer is yes. But that brings me then to the different question that the state has asked, and that is, again, whether Mr. Williams, having already been denied counsel, may appeal that denial to you. And I waive my uninterrupted time from this point forward. If you would like to ask questions, feel free. All right. We're open for questions. Thank you. So, Ms. Mills, I'm just wondering, why is it, do you think, that nine other circuits disagree with your position as to the piecemeal appeal, the right to an interlocutory appeal in this situation? Nine other circuits disagree with this court's decision in Robbins v. Maggio. Yes, sir. Well, I think they have their reasons, and they disagree that these sorts of orders are final in the sense that they are the final word on the subject insofar as they deny counsel during critical development stages of a lawsuit. Those other courts would say that the orders are inherently tentative and non-final and can always be revisited without any prejudice to the plaintiff. Those courts also say that these orders... or, excuse me, the motions for counsel that result in these orders require the court to enmesh itself in factual determinations that make the orders not really collateral to the merits. That's what the other courts say. The other courts would say that these orders are effectively reviewable on appeal after a final judgment. It is my position today that those courts are wrong and that this court was right in Robbins v. Maggio. There are three elements to the Cohen test. The Cohen test is the test for immediately appealable orders. Those elements are, one, whether the order conclusively determines the disputed question. Two, whether the order resolves an important issue completely separate from the merits of the action. And three, whether the order is effectively unreviewable on appeal from a final judgment. My position is that all three of those elements are satisfied, that Robbins got it right. Looking just to the first element, does the order conclusively determine the disputed question? Well, here the district court's order conclusively denies the assistance of counsel at a critical juncture in the case. Mr. Williams, of course, might re-urge his motion at a later date, but by that time he probably will have lost what I'll just call discovery opportunities that he might have been able to make use of had he had the assistance of counsel. It's very likely that all five remaining defendants in this case will file motions for summary judgment based on qualified immunity, which, as you know, qualified immunity gives a lot of seasoned lawyers much difficulty. Without the assistance of counsel, Mr. Williams will not be able to meaningfully respond to those motions and might very well lose his case. So these orders, although they might be revisited and in that sense can be characterized as tentative, they are final insofar as they deny relief at an important moment. Well, on the prong of effectively unreviewable on appeal, the fact is that we review these all the time in the ordinary course in a 1291 appeal from denial of relief in Section 1983 cases. We're constantly faced with an issue on appeal as to whether counsel should be appointed. So it's reviewable in all of those situations and in the rare that State points to, I think, only four. You may have different statistics. Four times when the denial has been overturned, it just seems that the usual bias against piecemeal appeals would call for us to decide these on the basis of a final appealable order and not the colon exception. Yes, sir, and you are correct. You can always review any district court ruling after final judgment. And certainly you can technically review this ruling if we were in a different situation. You could review this ruling after the case is over. But the question is not whether you can technically review it. It's whether you can effectively review it. And I think that you cannot meaningfully review the denial of counsel in a case in which without counsel, there likely will be no meaningful record to review. And that would be my response to that. How does that work as a practical matter? Would we have to appoint counsel to go through all the records and then say, well, if they would have had this, they could have had their own medical expert to say this other thing, and so we're ending up appointing counsel anyway to review the voluminous medical records and that sort of thing. How does that work? Well, I think that you might very well screen out some of the appeals, but likely if you think there's something there, you would have to appoint counsel, and you would end up, yes, appointing counsel anyway, just like you appointed me to come here today, because obviously Mr. Williams cannot represent himself in this appeal. So it's likely you could have counsel appointed on appeal to prosecute the appeal, to vindicate the right to counsel, and if you rule in their favor, you go back and start all over from square one, and if you want to talk about costs, costs of these appeals, you know, there's a significant cost to having to go all the way back and retrying a case or relitigating it to final judgment after you, at the end of the case, on appeal decide years later that the right to counsel was wrongly denied. I'll speak for a moment on the second element, which is whether the order resolves an important issue completely separate from the merits. The state argues these orders are not only not completely separate from the merits, but are enmeshed in the merits, and the state relies for that primarily on the Supreme Court's opinion in Cooper's. And I would just like to emphasize, in Cooper's, the motion in question was a motion for class certification, and as this court knows, motions for class cert are a distinct type that require rigorous analysis. It's not fair to compare this motion for counsel to a motion for class certification, which requires oftentimes its own extensive pre-motion discovery. Here, the district court already looked at the facts, decided on its own, independently, through its own screening process, that not only did Mr. Williams state non-frivolous claims, but that he presented the kinds of facts that, in the district court's words, presented serious issues. The district court already did that. On its own, the district court did not have to revisit the merits at all to separately ask whether Mr. Williams himself is capable of representing himself in these proceedings and whether the appointment of counsel would benefit everyone, including the court. How many 1983 cases has Mr. Williams filed? I don't know the answer to that. I am aware that there is at least one recorded decision. Don't you think that 80 pleadings indicates that he's no stranger to the courts? Well, I don't think he's a stranger to the courts. I don't think that 80 pleadings represents that he is effective at representing himself. You know, if we applied that test to ordinary litigants in civil cases, we'd be appointing counsel all the time. Well... I sympathize. I have read all the filings, and it does not take away from my belief that the district court is correct that there are serious issues here. And actually, all of those filings only reaffirms my belief that counsel is warranted here. And I hope that the court agrees that Robbins was rightly decided, that Mr. Williams is properly before you, and that his motion for counsel was improperly denied, and you vacate, remand, with instructions to appoint counsel. How do his claims regarding Heat relate to the claims with the people with the medical conditions in the PAC unit, for example? You know, the ongoing cases that... in Judge Ellison's court, that they've been enjoined, and all of that sort of thing. Are his claims similar to those claims about the PAC unit, that he has a medical condition and that he's exacerbated by Heat, or has he not really made that... flushed that out? I'm not familiar with the cases in Judge Ellison's court, so I... They've been to us two or three times, I think, so... No, go ahead. I'm not comfortable speaking... What are his claims? Can you... What's that? What are his Heat-related claims? Oh, his Heat claims are that he has a medical condition, and he ought to be housed in a unit that has air conditioning. He is not. What unit is he in again? I'm sorry? What unit is he in again? Um, well, Coffield, and he might be at the Michael today. I'm not sure. I'm not... I'm from Louisiana, and I don't know... But he's not in a medical unit... No, ma'am, no. ...for his alleged cardiovascular issues? No, ma'am. No. No. No, ma'am. Ms. Mills, if we do revisit Robbins, and let's assume Judge Garwood's analysis is persuasive to us, would that, in your mind, require us to revisit other precedent? And I'm thinking particularly in the Title VII context. In other words, would the application of the Cohen factor, should it ever depend on the body of law, or once we make a conclusion as to one area, would that control as to other areas? I don't know... Um, what the court's current, um, position is on the, um, appealability of orders denying counsel in, for instance, Title VII cases. I know that the court, um, pre-Robbins, held that those orders are immediately appealable, and I would believe that post-Robbins, at least until today, that that, um, still stands. And I presume that you probably would have to revisit, um, but I'm not familiar enough with those specific cases to offer an opinion. One thing you properly, um, rely on is stare decisis, that is, that we should stick with prior precedent unless there's a reason to overturn it. And as you know, one of the questions that we ask is whether there's a reliance interest that has developed over more than 30 years. Uh, I don't see any reliance, uh, interest here. Again, it's just one factor, but if there is one, tell us what that is. Well, I will agree with the state that typically when we talk about reliance, we're talking about some sort of economic reliance. You've changed your, you know, you've purchased property or you've otherwise done something that, um, in reliance on that, uh, puts you in a different position. I'm not sure candidly, Your Honor, that we have the same reliance here. I would say that, um, the principles of stare decisis that, um, warrant adherence to a court's own precedent, um, are valuable. The reasons that the Supreme Court has recently revisited, um, particular opinions and not adhered to principles of stare decisis are the state summarized. I agree with the state's summary of those reasons. Uh, they are, for instance, an opinion might have been poorly reasoned, it might have proven unworkable, there might have been subsequent developments in the law. None of those things apply here, in my opinion. Um, I've already explained to you the reasons I think Robbins was reasoned, that it was not poorly reasoned. Um, I think Robbins is workable. Um, the fact that there have only been four reversals in Robbins appeals does not mean that Robbins doesn't work. Um, I think that based on what I saw in the amicus brief, this court probably gets two or three Robbins appeals a year. Um, if you consider the number of appeals in which this court reverses the lower courts, I don't know that four, um, is such a bad number. Um, I don't think Robbins is unworkable. Um, and then we ask whether there's been some new development in the law. You know, most of the cases on which the state relies from other circuits were decided before Robbins was decided. So there's been no real new development in the law. The Supreme Court certainly hasn't said anything new that counsels a different result. Robbins heard, excuse me, the panel in Robbins heard all of the arguments that you're hearing today, and it decided, I think correctly, that these orders are orders that should be immediately appealed. If there are no further questions, I'll save the time for rebuttal. Thank you, Ms. Mills, you have preserved your rebuttal time. Mr. Hawkins, we'll hear from you. Thank you, Chief Judge Stewart. May it please the court. The court should overrule Robbins v. Maggio and dismiss this appeal for lack of jurisdiction. Robbins misapplied every prong of the collateral order doctrine. It has been rejected by nine circuits, it has been questioned repeatedly by judges of this court. None of the typical stare decisis factors weighs in favor of retaining Robbins, and as counsel conceded a moment ago, Robbins has not generated any reliance interest. In any event, the Robbins rule often works against the interests of the very pro se litigants who it purports to benefit. In asking the court to overrule Robbins, I will first discuss the collateral order doctrine, then turn to stare decisis. As counsel explained, the collateral order doctrine includes three factors that are conjunctive and narrowly construed. To be immediately appealable, an order must conclusively determine the dispute or question, it must resolve an important issue, completely distinct from the merits of the underlying action, and it must be effectively unreviewable on appeal from final judgment. An order denying the appointment of counsel satisfies none of those considerations. First, as Judge Garwood pointed out in his Robbins dissent, these orders are not conclusive, but they are inherently tentative, and the reason is that the Ulmer factors themselves are fundamentally mutable. It may be the case that a matter might not be exceptional on day one and then become exceptional on day two. That's a point that all the circuits that agree with you have emphasized. Is there any empirical evidence as to how often district courts actually do change their mind and conclude oh, it's become exceptional? We've attempted to search for the number of cases, Judge Higginson, in which that's happened, and we found it difficult to search because those often don't result in reported ... so we haven't seen any specific count in scholarship. The best we have is discussions with our own staff, the Office of the Attorney General, who say that this does happen routinely. They'll say anecdotally that if a prisoner, pro se plaintiff, is able to survive the motion to dismiss, survive qualified immunity, and survive the motion for summary judgment, typically that plaintiff will get counsel appointed for the purpose of going to trial, but I'm afraid that we haven't been able to develop an empirical account of how often that happens. But if the pro se litigant can do all that, they may not need counsel. I mean, the problem is that those are very high barriers in a qualified immunity case, and this case is different from many in that the judges have found there to be some merit or potential merit to what the plaintiff is claiming. So isn't that a little bit different? I mean, we're not talking about the typical case where somebody just doesn't like how their medical treatment has gone, but they've had the medical treatment here. It's a little bit more plaintiff favored, if you will, the fact. So shouldn't that make a difference? Well, Your Honor, Allmer, of course, is a series of considerations that can be balanced and weighed. I take Your Honor to be suggesting that this case might be more meritorious than other cases. I think the main point of the district court's order is we're not in a position yet to know whether that's true or false. In this case, the district court ordered Mr. Williams not to file anything until it had completed the process to determine whether the complaint could move forward. Mr. Williams disobeyed that order, and he moved for the appointment of counsel anyway. I take the district court's order rejecting that to basically be saying, I don't really know yet, but I'm happy to revisit this later. He then moved again for the appointment of counsel, and again, the district court said, based on what I've got in front of me here, this doesn't look like an exceptional case, but I'm going to reserve the right to revisit this down the road. And I think that experience in this case shows that these orders are inherently tentative, and that the district court's opinion can change as the case moves forward. But technically, every interlocutory order of a district court can be changed. I mean, maybe there's one or two that can't that I'm not thinking of, but you could grant a partial summary judgment, for example, as a judge, and then undo it later, as long as you still have jurisdiction as the district court. So this notion that, well, I can always reconsider what I've done as a district court, that would mean nothing would be subject to collateral order. And Judge Haynes, Gulfstream addresses that exact argument. Gulfstream says that just because something could technically be revisited doesn't mean that it is conclusive as to the determination it has made. Gulfstream says that we're to look to whether an order is intended to be the final word on the subject, and the orders in this case, and in most of these cases, clearly won't be the final word. But they could practically be, for the reason I said. You mentioned all of these hurdles that the plaintiff has to jump over, and these are very difficult hurdles in a deliberate indifference qualified immunity case that are difficult for counsel, as counsel opposite noted. So by the time you're through all of that, you may be done, and you may be appealing an actual final judgment without any record to point to, if you're a prisoner unable to do discovery, unable to go to the library, etc. Well, a couple of responses, Your Honor. First, even if we could come across an order that actually is conclusive, it's still not going to satisfy the other two factors that are set out in Cooper, and all three have to be satisfied for these class of orders to be immediately appealable. Second, the Supreme Court and this Court have explained that these orders have to be treated as a category. We cannot look at individual orders and determine appellate rights based on the facts of an individual case. The Supreme Court explained that in Carroll v. United States at 405, and we've cited in our brief the Deepwater Horizon case from this Court several times, which makes that point. Why isn't the category 1983 cases? I mean, they all have again, there can be exceptions to what I'm saying, but a majority of them all have this situation, and in prisons they have the deliberate indifference and they have the qualified immunity. Your Honor, that is the category. That's exactly the category we're at here. Why is the point that I made earlier any different in any case? Now, it may be that the plaintiff lacks any facts in their favor, that can be true, but in the category where somebody's claiming something, that initial point of the qualified immunity summary judgment or dismissal motion is largely the whole case because if the defendant loses, they can interlocutorily appeal. So, it's largely the whole case this motion to dismiss or summary judgment on qualified immunity and the plaintiff has the burden on that. So, why isn't that a fairly conclusive point? Well, Your Honor, even if I'm wrong about this, I think it might be helpful to explain it in terms of the other Cooper's factors. The order that's before the Court now, the order denying the appointment of counsel is not entirely separate from the merits and also a motion to dismiss will not be entirely separate, a motion for summary judgment also will not be entirely separate. The order before the Court now is inextricably wound up in the merits of the underlying action because the Ulmer factors themselves require the District Court to look to the merits. The core inquiry The District Court in this case apply the Ulmer factors? Your Honor, the District Court did not explicitly make Ulmer findings, but Summary order? It's a summary order, Your Honor, but I don't know how the District Court would have made Ulmer findings because this motion was seriously premature. The District Court doesn't have anything to go off of other than the complaint, which hasn't even passed the 1915A screening yet. So to suggest... But you agree there's a requirement to apply the Ulmer factors? Well, Your Honor, the Jackson case, which we discussed at page 17 of our brief, does say the District Courts should do that, but the Jackson case also points out... They should do it?  recall whether it should or required to, but it does instruct District Courts... When is it that they don't have to do it? I'm sorry, Your Honor? When is it that they wouldn't have to do it? I think in a case like this one, it's impossible to do it. It's unclear how the District Court could have made any Ulmer determination on the record before it, which consisted only of a complaint. Should they deny without... Should they specifically say I can't evaluate this under the test because it's too premature and so I'm denying it at this premature stage without prejudice? I mean, wouldn't a thorough... Wouldn't that be the thorough way to handle it? Knowing that you have to review for the Ulmer factors if you're not able to do so? Your Honor, I think the Jackson case contemplates the possibility that a District Court will not make Ulmer findings. Jackson explains three things. Number one, District Courts ought to make Ulmer findings. Number two, even if they don't, that is not a barrier to this Court's appellate review of an order denying the appointment of counsel. The appellate court can determine from the record whether a counsel is warranted. Number three, even if that... Even if those first two fail, this Court has the ability to conduct a limited remand back to the District Court to make findings on the Ulmer factors. If you don't prevail in your first... in your big argument, what do you think should happen? Should we limited remand? No, I don't think that's appropriate here as we've set out in part three of our brief. This is not an exception. Because it's not exceptional because we don't know yet? That's right. There's no basis in the record now. What about the HEAT claims? Can you help... You certainly know about the HEAT claims and the injunction in the PAC unit and the people who have illnesses and all that. Can you help us with that? How is this claim different than those or is it just not teased out enough to know if it's different? Mostly, Judge Elrod, it's just not teased out enough. As counsel pointed out, Mr. Williams is not in the PAC unit. He's not a member of the class. He's not a member of the medical classes defined in those pending claims before Judge Ellison. Now, UTMB has conceded in its answer that only part of the unit that he's in is not air-conditioned. That's all we know from the answer. And the answer, of course, was filed after the two orders before this court were entered. But he was serious, if it were true, that he were... has all these problems with his health and he's in a non-air-conditioned unit, would he be similarly situated to all these people that do have claims and have gotten injunctive relief? Your Honor, I don't know that the nature of his medical claims are the same as the nature of the medical claims pending in the class action before Judge Ellison that this court has revisited. Is that a complicated matter that would require an attorney? Well, Your Honor, it's not complicated in the sense that he's clearly not a member of the class. Now, the fact that one litigant in a different part of the state might have claims that are similar to claims being pressed by other litigants in a different part of the state does not make a case complicated. It just means that there might be some on-point precedent that he could potentially... But it might make it meritorious. I mean, the whole state of Texas is pretty high. Mr. Hawkins, may I move from that to the... Do you agree with Judge Garwood's dissent in the Robbins case? Yes, Judge Jones, we think... Well, he added... he added, in addition to the three traditional Cohen features, Cohen established that a collateral appeal of an interlocutory order must present a serious and unsettled question. Now, wasn't there a recent Supreme Court case about denial... about counsel, something about conflict of counsel or something like that? Didn't the court reiterate... Didn't the Supreme Court reiterate that? That we, you know, important as right to counsel may be, it was a civil case. Judge Jones, I'm not sure I know the case... Okay, well, then forgive my lapse of memory, but the point is, we don't take collateral order review for things that are routine. That's correct, Judge Jones. This court has held, and I think this is echoed in your comment, I think that this court has held that typically there's no collateral review for orders that are reviewed for abuse of discretion. The denial of the appointment of counsel is reviewed for abuse of discretion. Typically, that's not grounds for collateral review. Counsel, can I ask you if the district court had determined that there were exceptional circumstances, but did not appoint counsel because they were having trouble finding a counsel, like the situation in the Norano case, would your answer be any different about its ability to be reviewed? My answer would be exactly the same, Judge Elrod. That order would not satisfy the collateral order doctrine. There would be no appellate jurisdiction. But would it still be error whenever we did eventually review it? Yes. If the district court determined, contrary to Noronho, that it lacked the power to order a pro bono representation, then on review from final judgment in an ordinary 1291 review, this court could reverse on the basis of Noronho. And Judge Smith made this point earlier. I think it's worth stressing that the third prong, unreviewability on appeal, is also not satisfied by this category of orders. As Judge Smith pointed out, this court routinely reviews these types of orders. Yes, but we routinely have to review it with very limited records. And the problem is as an appellate court, as you know, we're limited to the record. We can't sit around guessing what might could happen. And so the problem is it's a bit of a vicious circle here that you can't build the record if you're this pro se prisoner unable to go to the law library, unable to do discovery. But then when you come up on appeal, we say, well, you didn't show anything in the record. You didn't show that you were like these people in the PAC unit, or you didn't have medical experts on your behalf, etc. And that's the argument. I can foresee this case, if it goes back, it'll go back regardless of what we find jurisdiction or not. But if it goes, when it goes back, if he doesn't have counsel, y'all will be back someday. He will have lost, more than likely, although not for sure. And you'll be saying that's not in the record, that's not in the record, that's not in the record. Right? A few responses to that, Your Honor. First, in footnote four of our brief, we cite ten different cases in which this court has reviewed the denial of appointment of counsel following final judgment under 1291. And in four of those ten cases, this court vacated the order denying counsel and ordered the district court to reconsider its decision in light of the evidence that had been developed. Now, to the extent the concern is waiver or forfeiture, those are doctrines that this court can excuse and can overlook. And so to the extent that's a concern, the court has a potential solution to it. Your argument will be, no record. Right? You won't... I mean, you know that. And Jackson addresses that concern as well, Your Honor, by saying that if the record is unclear, if it's muddled, the court can conduct a limited remand and ask the district court to make findings on the Ulmer factors. If you're persuasive saying the Garwood analysis controls the same question I asked opposing counsel, would that require us to revisit any of our doctrine in other areas of law, especially Title VII? Would there be any intellectual reason that it wouldn't apply equally in both areas? Well, Your Honor, the court would not formally have to reconsider its Title VII cases, but I will stipulate today that the arguments that we're making here in the 1983 context would apply with full force in the Title VII context. Now, that doesn't mean the court would have to decide whether this applies to Title VII or not. In fact, it wouldn't. In Title VII, Judge Higginson, the statute governing the appointment of counsel is different from 1915, which is now before the court. However, that statute does look to the merits. That is one of the things that should be considered. And so in a Title VII case, an order denying the appointment of counsel is going to be inherently tentative for the same reasons these ones are. It's going to be wrapped up in the merits for the same reasons these ones are, and it will be reviewable effectively on appeal for the same reason that these ones are. Is the Ninth Circuit the only one that has contemplated sort of different results in different areas? I believe that's correct. I believe the Ninth Circuit is the only one that's drawn a distinction between Title VII and 1983. It did that based on legislative history. We don't think that's a proper consideration, but I'm not aware of another circuit. And Judge Higginson, I think it's worth noting that there is discrepancies within this court's own law on the appointment of counsel. Currently, under the current law, these orders are immediately appealable in 1983 cases and in Title VII cases. They are not immediately appealable in products liability cases and in habeas cases. That inconsistency within this court's own case law, I think is one of the relevant considerations in the stare decisis analysis. And unless there are further questions about the collateral order doctrine, I'll use my remaining time for the stare decisis discussion. Mr. Hawkins, if we were to decide, obviously you ask us to take this case initially in bank without going through a panel, and we agree with that. And so the main issue is whether to overrule Robbins. That's the reason that you gave in your petition. If we decide to overrule Robbins for whatever reason, and we give whatever explanation we wish to, isn't it true that the only thing then that we can do is dismiss this appeal? I mean, I was a little bit confused about your talk about limited remand or whatever. It's not even a remand. We dismiss this appeal. It's an appeal only from a particular order from the Court of Appeals, and the rest of the petition is still there. So technically, again, it's not even a remand. It's just that we give, again, whatever explanation we wish. We overrule Robbins, and then the appeal is dismissed for want of jurisdiction. Tell me where I've messed up on that analysis. No, that's exactly correct, Judge Smith. We're asking the Court to overrule Robbins, and upon doing so, hold that it lacks jurisdiction over this appeal. When the Court notes that it lacks jurisdiction, the only thing the Court can do is dismiss this appeal for lack of jurisdiction. Your Honor's correct that it then goes back to the District Court, and Mr. Williams can continue to press his claims. Well, it doesn't go back to the District Court. It's in the District Court. We're only here on one motion, but there's been no final judgment from which an appeal has vested jurisdiction from the District Court. Correct, Your Honor. I'm sorry for the loose terminology, but that is correct. It's in the District Court now. There should be no jurisdiction over this appeal. Mr. Williams can continue to press his claims, and after final judgment, he can then appeal from the demand, or he can appeal the final judgment if he loses. In that appeal, he can raise the lack of the appointment of counsel, and there, on final judgment review, under the Jackson case, if the Court needs to conduct a limited remand, when there's clearly jurisdiction under 1291, it has the power to do so. That's all I meant to suggest, Your Honor. I do have a question, but No, no, no. Okay. Mr. Hawkins, similar to what Judge Higginson was asking you about, if we were to rule in your favor, assuming arguendo, how does this affect cases about being denied counsel of your choice, and whether you can have that reviewed, and whether or not you have an irreconcilable breakdown with your counsel, and whether you can mandamus, and what are the ripples in the area of choice of counsel? Your Honor, I don't know that there would be any. I suppose it would depend on the specific order in question, but here, I think the category of cases, and this is the way the other nine circuits who've decided in our favor have approached this, the category of cases is the denial of a motion to appoint counsel in the 1983 action. We look at that category and decide whether that category satisfies the factors that are set out in Cooper's. Now, the repercussions that might have in other orders would depend on whether those orders are similar to this one or not. There's not necessarily any impact. It would depend on the nature of the order. Thank you. Turning, if I may, to stare decisis. Let me ask you just one more question. You mentioned several times that the case had not gone to 1915 screening, so we dismiss the appeal for the reasons that you're urging. It's not back at the district court, but as Judge Smith said, it's still in the district court. So is it your view it's just back at the 1915 screening stage? Well, Your Honor, the defendants... I'm sorry? I mean, in effect, is that where status quo in the district court is? Yes. After the notice of appeal was filed, we did file an answer, so I believe we're past the screening at this stage. The answer is in the record on appeal. It wasn't before the district court when the district court issued the orders that are now before the court, but there is an answer and if the score dismisses for lack of appellate jurisdiction, I assume the next step is discovery in light of the fact that we have an answer. Discovery with or without a lawyer. Okay. Go ahead. Turning to the stare decisis factors, all of the stare decisis factors counsel against retaining Robbins. First, Robbins was not just wrong, but it was exceptionally poorly reasoned. As Judge Garwood pointed out in his dissent, the majority made a number of logical errors in that decision. For example, the majority held... One more question about the... Well, I know I can. I'm doing it. The effectively unreviewable point. If in fact it is true that he has this heart condition that is being affected by this heat, he could die or become severely disabled while we're all waiting around for a district court and the appeal and the blah, blah, blah, blah, blah. So would that make it effectively unreviewable that if he's right, his health is being severely impacted to the point that... I mean, they've had deaths in Texas prison from the heat, and a cardio issue can result in a heart attack that can either severely disable someone or kill them. And then, yes, it would be effectively unreviewable. Well, a couple of points on that, Your Honor. I don't know that there's a case that speaks to that scenario specifically, but the Cooper's case does specifically speak to the possibility of a plaintiff abandoning his claims in light of the lack of counsel, and Cooper says that is not a proper consideration that does not make something effectively unreviewable. I don't know of any case that addresses death. We would hope that in a situation that was life-threatening, of course, Mr. Williams would get emergency medical help and, of course, file a temporary restraining order if he needs to. He's asked for injunctive relief and not been helped, and these prisoners that have been through the heat, I mean, this heat thing has been going on for a while, because I can remember a case from years ago, and they are dying. Now, we can debate whether that was entirely caused by the heat, so on and so forth. I'm not addressing the merits, but I know that prisoners have died in un-air-conditioned prisons that got to 110, 120 degrees. So, that strikes me as making this effectively unreviewable. The potential that if we accept his claims as true, which we should at an early stage, he is medically being put at risk. Judge Haynes, I think the error in that argument is that that looks to the specific case and not to the category. This court has held an in-redeem point of horizon, and the Supreme Court has held in the Digital Equipment Court quote, in fashioning a rule of appealability under Section 1291, we look to categories of cases not to particular injustices. But this is part of the category. I mean, when we have these 1983 cases involving prisoners, anyway, a lot of them are medical issues of varying kinds. It can be everything from, you know, I'm in pain, which maybe isn't life-threatening, to I'm not able to get the help I need to live. So, a good many of those, I realize that's not every kind of 1983, but when we're looking at a category, I do think we have to look at the subsets of that category. And this, Mr. Williams, is not unique in making a claim of a medical problem. And what I'm saying is medical issues aren't just something that you can, oh well, you know, we'll treat you next year. That's the whole deliberate indifference issue, is you're not treating someone whether they die or not, they're in pain or they're in agony, or they become more disabled, or they lose the ability to walk, and all of those things. And you know that if that were happening to you, you would not think that that's just, well, oh well, we'll just review it in a couple years. Well, if it happened to me, Your Honor, I would move for a TRO. But I think, Your Honor, even if I'm wrong Which he did! I think that's not emblematic of the category. I think that's not emblematic of the category as this Court's precedents bear out, but even if I'm wrong about that, Your Honor, the Cooper's factors are conjunctive, and that order still will fail at the first step and the second step of the Cooper's analysis, and that makes the category effectively unreviewable on appeal. The second story decisive consideration, I think, also cuts against retaining Robbins. Robbins is unworkable because it creates significant consequences, in particular frivolous appeals that consume state resources and judicial resources with almost no offsetting benefit. Robbins has created a regime in which there is costs imposed on the judiciary and on the state with almost no benefit to offset them. These appeals fail almost every time, they rarely succeed and that low success rate makes it inappropriate to retain Robbins. Third, Robbins is inconsistent with related decisions and with subsequent developments as we've discussed this morning there's inconsistency within this Court's case law as to the appealability of these orders, as I just discussed with Judge Higginson and as we discussed earlier Robbins is on the short end of a nine to do circuit split. Every circuit that has addressed this issue since Robbins was decided has rejected Robbins and held the other way. And finally the fourth star decisive factor is whether there's a reliance interest and as counsel conceded earlier, there is no reliance interest that justifies retaining Robbins. Unless the Court has any further questions, we would ask the Court to overrule Robbins and dismiss this appeal for lack of jurisdiction. Alright, thank you Mr. Robbins. Thank you, Your Honor. Back to you Ms. Mills for a rebuttal. Your Honors, I would like to revisit Jackson. Um, actually the District Court order in that case, I quote it said, the Court has considered the Alma factors and concludes in its discretion that counsel need not be appointed. That's what the District Court's order said in that case. This Court, a panel of this Court which interestingly included Judge Garwood, said although we affirm the District Court's order our disposition of this case should not be seen as condoning the Court's summary handling of Jackson's request for counsel and considering motions for appointment of counsel in 1983 cases District Court should make specific findings on each of the Alma factors rather than deciding the motion in conclusory manner and then this gets to reviewability the failure to issue findings frustrates appellate review and cannot ordinarily be accepted so yes, the District Court here should have made specific findings But that doesn't differ from whether the, that has no bearing on whether the issue is immediately appealable or whether, well I think it kind of gets to the third element of the Cohen test which is whether these issues are effectively reviewable at all many years later without a meaningful record I don't understand because if in writing an en banc opinion here that overturned Robbins we were to adopt that language and say that the practice is for judges to do this then they could do it and on final judgment we would review I understand that but I think the point is simply you need findings here to decide what you're dealing with to review it furthermore you're going to need a record to decide later whether these issues merited attention at the time merited appointment of counsel reviewability requires that you have something to review and without counsel someone like Mr. Williams can't give you something meaningful to review. What about the issue that certainly prisoner 1983 cases a large number of them involve medical issues if we take all 1983 cases in the world or in the country maybe not how does that affect the categorical analysis of the effectively and reviewable? Well I think certainly qualified immunity comes up in almost every 1983 case and as we said a couple of times that raises very difficult issues I'm sorry my question is specifically about how much should we consider that if you die it's not all that reviewable how much should we consider the medical aspect of these 1983 cases when that is not present in every 1983 case? I would encourage you to consider that. Can you tell us why? Respond to the state on that Certainly it's our position that without counsel you can't make a meaningful record but certainly if you die you can't make a meaningful record in your state if it pursues the claim won't have a meaningful record to present to you. I think that the whole point of as you said these cases is to get medical attention most of them and if you perish waiting on medical attention and you haven't had a lawyer pressing your case and you haven't been able to get to this court to say I don't have a lawyer I'm dying. Yeah I think that's very serious. Excuse me for the sake of argument there's also a class of cases not uncommon in this court where a prisoner says that he's been threatened by other prisoners or guards or beat up by the guards and he wants an injunctive relief to keep him away from those prisoners and so on. Now people could quote die from the consequences of ineffective decision in those cases so would that be wrapped up in the argument that's being made here anytime a prisoner says I will die if I don't get relief? I haven't contemplated that I presume if you're going to draw the circle that big it could be wrapped up in the same analysis. Well I mean that feeds back on the idea that we're not supposed to take what is being suggested here is that we splice and dice the class of cases that are going to be made interlocutory appealable here and it's difficult to do that. I understand and I don't disagree that you are not supposed to take a categorical approach. I agree with Judge Haynes that this category is not impossible to define and in particular deliberate indifference makes these very difficult cases. Let me ask you a question on the dwindling. I asked the question of Mr. Hawkins and he said well the state has filed an answer so in fact we're past the screening stage 1915 and perhaps at the discovery stage so assume the court overruled Robbins dismissed the appeal it's still in the district court what's your view if it's at this discovery stage you know is it hope in one way needing a lawyer to go press through the discovery stage or your sense then of there being any further review on his motion for counsel? I'm sorry your honor is your question whether he deserves a lawyer before? Well yes my question is if it was back at the screening stage presumably if the district court thought it was premature when he filed his motions ya ya ya but you know if you file an answer if you're out of the screening stage and it's back at discovery then he's filed 85 whatever he's filed so is it him back there or is your sense he still can renew his request for counsel in light of the discovery? With the court's indulgence may I clarify the timeline here? Very quickly You do it without any commas or semicolons The complaint was filed immediately Mr. Williams asked for counsel that motion was denied The court ordered a Martinez report. The court received the Martinez report read it the magistrate judge wrote a very long report and recommendation saying there's serious issues. After that Mr. Williams renewed his request for counsel again denied Fast forward a couple of months the district court accepts the magistrate judge's report and recommendations issues its own opinion that identifies these serious issues. A few days later it denies Mr. Williams request for counsel The screening is done and not only has Mr. Williams survived that screening with a plausible claim he survived it with serious issues Now we're on appeal but when we go back which regardless of what you do we're going back not me but Mr. Williams correct we're now in discovery and certainly discovery is going to be a lot more difficult without counsel assisting Mr. Williams Thank you for indulging My question and while you're there about to leave we do note that you are pro bono appointed counsel and on behalf of the court we appreciate all the lawyers who are on the list and agree to accept pro bono appointed counsel and certainly in these categories of cases where you know you're totally unacquainted with it until you're appointed and gearing up for it and so forth and lastly of course having the premium opportunity to answer questions from 17 robust people you know adds to the value of pro bono in every sense of the word but we do appreciate your briefing and argument in this case here and in the other cases that you take and thank you for doing that and continue Thank you Mr. Hawkins for your side for gearing it up and presenting it to us interesting issues and we'll get it decided as quickly as we can. Having said that that concludes the arguments in this first case we're going to take like a year